JUDGE MARRERO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 1835

AXA ART INSURANCE CORPORATION,

      *Plaintiff,*

 -against-

PHILADELPHIA MUSEUM OF ART,

      *Defendant.*

10 Civ. ____ ( )

COMPLAINT

RECEIVED
MAR 09 2010
U.S.D.C. S.D.N.Y.
CASHIERS

  AXA Art Insurance Corporation ("AXA"), by its attorneys, Lynn & Cahill LLP, for its complaint against defendant Philadelphia Museum of Art ("PMA"), alleges as follows:

### INTRODUCTION

  1. This is an action for a declaratory judgment, pursuant to 28 U.S.C. § 2201 providing that the economic losses suffered by PMA as a result of the conduct of a third-party do not constitute a loss covered by PMA's insurance policy with AXA. AXA also seeks a judicial determination that PMA failed to satisfy a condition precedent to coverage and that any claims PMA intends to assert with respect to its economic losses are time-barred under the contractual limitations period set forth in the policy.

### PARTIES, JURISDICTION AND VENUE

  2. AXA is a corporation created under the laws of the State of New York. Its principal place of business is located at 4 West 58th Street, New York, New York 10019.

  3. PMA is a non-profit corporation created under the laws of the State of Pennsylvania. Its principal place of business is located at 2600 Benjamin Franklin Parkway, Philadelphia, Pennsylvania 19130.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. AXA and PMA are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over PMA pursuant to N.Y.C.P.L.R. § 302(a)(1) because this action arises out of the transaction of business in New York. Such transactions include, but are not necessarily limited to, the purchase of the insurance policy at issue and the sale of the artworks at issue.

6. Venue in this District is proper pursuant to 28 U.S.C § 1391(a)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

## STATEMENT OF FACTS

### A. The Policy

7. At all times relevant to this action, PMA was insured under an insurance policy issued by AXA (the "Policy") covering fine art owned by PMA (and other limited coverage not relevant to this action) against "all risks of direct physical loss or damage from any external cause," not specifically excluded in the Policy.

8. Additional terms of the Policy that are relevant to this action include the "Notice of Loss" and "Legal Action Against Company" provisions.

9. The "Notice of Loss" provision stated that "[t]he insured shall as soon as practicable report to this Company or its agent every loss or damage which may become a claim under this policy and shall also file a detailed sworn proof of loss with the Company or its agent within ninety (90) days from the time the loss is discovered."

10. The "Legal Action Against Company" provision stated that "[n]o legal action may be brought against the company unless it is commenced within twelve (12) months

following the discovery of the loss by the insured."

### B. The Sale of the Works

11. In an effort to sell certain artwork in its collection (a process formally called "deaccession"), PMA entered into a written consignment agreement dated September 15, 2006 ("the Consignment Agreement") with the Salander-O'Reilly Galleries, an art gallery then located at 22 East 71st Street, New York, New York ("the Gallery").

12. On information and belief, PMA and the Gallery had a "good relationship of long standing," as stated in a letter dated October 30, 2007 from PMA's General Counsel, Lawrence H. Berger, to the Gallery (the "October 30 Letter").

13. Pursuant to the Consignment Agreement, PMA consigned two paintings to the Gallery: "The Harbor" by Maurice Prendergast and "Mountain Landscape" by Arthur B. Davies (together, "the Works").

14. At or around the time PMA and the Gallery entered into the Consignment Agreement, PMA delivered the Works to the Gallery.

15. Paragraph 5 of the Consignment Agreement allocated the risk of loss or damage to the paintings to the Gallery, providing:

> Until the Works are sold or returned to us [PMA], you [the Gallery] will be responsible for all damage or loss of the Works and must insure the Works, for our [PMA's] benefit, against damage or loss in an amount not less than $1,500,000. In such connection, upon request of PMA you will arrange to have PMA named as an additional insured on your [the Gallery's] insurance.

16. On February 27, 2007, the Gallery informed PMA that it had received an offer from an unnamed buyer to buy both Works for a total price of $800,000.

17. The terms of the sale were that payment would be made in monthly installments, to be completed no later than December 31, 2007.

3

18. On March 6, 2007, PMA informed the Gallery that it would accept the offer. On March 27, 2007, Alice Beamesderfer of PMA added that "[w]e're delighted that the sale of the Prendergast and the Davies is now confirmed."

### C. Events Subsequent to the Sale

19. Upon information and belief, the Gallery did not remit any sale proceeds to PMA for the Works. The first installment was due on May 20, 2007. PMA began complaining to the Gallery informally via e-mail as early as June 2007.

20. The October 30 Letter was the first formal post-sale communication to the Gallery. It demanded either documentation of the sale of the paintings and payment of the proceeds therefrom or immediate return of the paintings to PMA.

21. As noted, on the October 30 Letter, the General Counsel stated that "[t]he Museum has enjoyed a good relationship of long standing with the Galler[y]. The Letter then expressed sincere "hopes that you can overcome your present difficulties," but added that "you must appreciate that PMA is concerned about the recent stories in the press and your lack of communication with us."

22. On or about November 1, 2007, the Gallery and its principal, Lawrence Salander, filed for Bankruptcy under Chapter 11 of the Bankruptcy Code. On information and belief, PMA timely filed and maintains valid claims against the Gallery and Mr. Salander with respect to the lack of payment from the sale of the Works.

### D. PMA's Claim Under the Policy and AXA's Response

23. By letter dated April 23, 2008, PMA for the first time notified AXA of its contention that it had suffered an insurable loss of a potential claim.

24. After reviewing the claim, AXA advised PMA that its claim did not present a loss

4

covered under the Policy.

25. The reason for AXA's denial of the claim is straightforward. PMA did not suffer a "physical loss" of the Works. Rather, it knowingly and voluntarily relinquished its interests in the Works by selling them to the Gallery for $800,000 in March 2007. AXA has no reason to dispute PMA's assertion that the Gallery did not satisfy its payment obligations with respect to the Works, and likewise has no reason to doubt that PMA has a valid claim against the Gallery and Mr. Salander. The validity of that claim, however, does not transform PMA's voluntary relinquishment of physical possession of, and title to, the Works into a physical loss of the Works under the Policy.

26. The relevant provisions of the Uniform Commercial Code further underscore PMA's lack of a valid claim of physical loss under the Policy. UCC § 2-401 provides that "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place ..." Title to the Works therefore passed no later than March 27, 2007, when PMA confirmed the sale of the Works.

27. UCC § 2-501 provides that "[t]he seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him." PMA sold the Works outright, without the reservation of a security interest, and therefore lacked an insurable interest in the Works after the sale.

28. As noted, the Policy required that legal action be brought within one year of the discovery of the physical loss. For the reasons stated in this Complaint, there was no physical loss of the work. Assuming for the sake of argument, however, that there was a loss, it occurred

no later than the sale of the Works in March 2007, and certainly no later than the Gallery's bankruptcy filing on November 1, 2007, and even more certainly no later than PMA's own statement in its initial notice to AXA of April 23, 2008 that the loss occurred on December 31, 2007. PMA's claim under the Policy is therefore barred by the limitations period stated in the Policy.[1]

29. The Policy also obligates PMA to "file a detailed sworn proof of loss with the Company or its agent within ninety (90) days from the time the loss is discovered." By failing to file a proof of loss until April 23, 2008, PMA exceeded the 90-day limitation under even the latest possible date of discovery: December 31, 2007. The failure to comply with this notice provision is a material breach of PMA's obligations under the Policy, and is therefore another independent basis for the denial of coverage.

### CLAIM FOR RELIEF
(Declaratory Judgment)

30. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 29 of this Complaint.

31. Pursuant to 28 U.S.C. § 2201, this Court is authorized to resolve all justiciable controversies within its jurisdiction.

32. For the reasons stated in this Complaint, AXA has determined that PMA is not entitled to coverage under the Policy with respect to the Works.

33. PMA has consistently stated its disagreement with AXA's determination.

34. The parties' dispute is active and ripe for determination by this Court and, therefore, presents a justiciable controversy.

---

[1] The parties entered into a tolling agreement effective as of December 23, 2009, but that agreement provides explicitly that it does not revive claims that expired prior to that date.

that:

**WHEREFORE**, AXA demands judgment in the form of a judicial declaration

(i) PMA's claim for unpaid sale proceeds from the Works does not constitute a loss covered under the Policy;

(ii) PMA failed to satisfy a condition precedent to coverage by giving untimely notice of the Claim;

(iii) Any cause of action arising out of the Claim is time-barred under the lawsuit limitations period set forth the in Policy;

(iv) Such other and further relief as the Court may deem to be just and proper.

Dated: New York, New York
March 9, 2010

LYNN & CAHILL LLP

By: _____
John R. Cahill (JC 4229)
Ronald W. Adelman (RA 8633)

58 West 40th Street
New York, NY 10018
(212) 719-4400
*Attorneys for Plaintiff AXA Art Insurance Corporation*